No. 13,739.

RACHEL BENTON, TESTAMENTARY EXECUTRIX OF E. B. BENTON, vs. MISS ELLA BENTON AND MRS. MARY MONROE.

### SYLLABUS.

1  A dative testamentary executor is authorized to bring an action to recover for the succession, real estate claimed to be owned by another under a tax title, when the heirs of the deceased are absentees.  (C. P. 123.)

2  Issues as to whether or not the property belongs to a community alleged to have existed between deceased and the plaintiff who sues individually, as well as testamentary executrix, cannot be determined in such action. though the defendant be one of the heirs of the deceased, if the other heirs be not parties.

3. Where title to certain property is a matter of contest between "A" and "B" it may be redeemed by parties representing the interests of either of the two when it is claimed, under a tax title, by a third person adversely to both "A" and "B," leaving the effect of the redemption to be subsequently determined as between the other parties.

4. A letter from the adjudicatee of property sold at a tax sale to an attorney at law, who has represented her, to accept on her behalf money tendered to redeem the property, which letter was exhibited to the parties making the tender as evidence of his authority, cannot be excluded from being received in evidence, on the ground of its being a communication between client and counsel.

5. When it has been shown that such letter has been mislaid or lost and could not be found after diligent search, secondary evidence of its contents can be received; it is not a condition precedent to such evidence being received that the loss of the letter should have been advertised.

APPEAL from the Twenty-sixth Judicial District, Parish of St. Tammany—*Thompson, J.*

*Wickliffe & Falls, Stifft & Madison* and *Thomas M. Burns,* for Plaintiff, Appellee.

*Stephen D. Ellis, Benjamin M. Miller,* and *Benjamin Rice Forman,* for Defendants, Appellants.

The opinion of the court was delivered by NICHOLLS, C. J.

### STATEMENT OF THE CASE.

NICHOLLS, C. J. The present suit was instituted by the plaintiff, in the capacity of testamentary executrix of Edward B. Benton, and also individually.

She alleged that her deceased husband owned at the time of his death the property situated in the parish of St. Tammany, known as Honey Island, which was described in the inventory of the succession of E. B. Benton filed in court.

That it belonged to the community which existed between said Benton and herself at the time of his death, which property was still in her possession and had been since September 24, 1897; that her said husband died on the 4th day of June, 1897.

That on the 15th day of May, 1897, the sheriff, *ex officio* tax collector of the parish of St. Tammany, sold and transferred by act of sale said property to Ella S. Benton, for the price and sum of one hundred and

sixty-eight dollars and ten cents, for the taxes due the State of Louisiana and parish of St. Tammany upon said property for the year 1896.

That said act of sale was recorded in the clerk's office in St. Tammany on the 8th day of June, 1897.

That on the 7th day of June, 1897, Ella S. Benton opened the succession of petitioner's deceased husband and offered for probate a will of said deceased disposing of the above described property and naming her as executrix thereof, and prayed to be confirmed and qualified as such executrix.

That she was confirmed and qualified as such executrix on the 10th day of June, 1897.

That on the 24th day of June, 1897, she was destituted and removed from office as such executrix by order of the court, and on the third day of August, 1897, petitioner was appointed dative testamentary executrix of said will, and on the 24th day of September, 1897, qualified as such.

That Ella S. Benton was during all of said time and was still a citizen and resident of the State of New York.

That on the 14th day of May, 1898, petitioner, through her attorneys, Stifft & Madison, Esqrs., offered and tendered to Eugene D. Saunders, Esq., attorney at law, attorney and agent for and representative of Ella S. Benton in all her matters and affairs in the State of Louisiana, and especially in the succession of Edward S. Benton, the sum of two hundred and twenty-three dollars and thirty-two cents, being the amounts paid by her for said property, as above set out, together with all the penalties, interest and costs allowed and prescribed by law for the redemption of said property from said tax sale, and its restoration to the succession of Edward S. Benton.

That Saunders, acting as attorney and agent for and representative of Ella S. Benton, under due and sufficient authority from her so to act, accepted the money so tendered for the purposes for which it was tendered, and gave to petitioner, through her attorneys, his receipt therefor in his capacity as aforesaid.

That notwithstanding the foregoing facts Ella S. Benton, on the 4th day of November, 1899, attempted to convey the property to Mrs. Mary E. Monroe, domiciled in said parish of St. Tammany, by an act of sale dated the 4th day of November, 1899, which act of sale Mrs. Mary E. Monroe had caused to be recorded in the clerk's office in the parish of St. Tammany, on the 20th day of November, 1899.

That the act of sale from Ella S. Benton to Mrs. Mary E. Monroe was null and void, for the reason that Ella S. Benton at the time same was made had no right, title, interest in and to said property, and that the making and recording of same constituted a cloud upon the title of petitioner and said succession to said property, as also did the said title from the sheriff to Ella S. Benton, as above described; that both of said titles and the recording thereof should be cancelled and erased.

The premises considered, she prayed both individually and in her capacity as dative testamentary executrix, as above set out, that the court appoint an attorney *ad hoc* to represent Ella S. Benton, who was a non-resident of and an absentee from this State; that Ella S. Benton, through said attorney *ad hoc* so appointed, and Mrs. Mary E. Monroe be cited; that after due trial there be judgment in favor of petitioner, both individually and in her capacity as said dative testamentary executrix, against Ella S. Benton and Mrs. Mary E. Monroe, decreeing that the said title from the sheriff to Ella S. Benton, dated May 15th, 1897, and recorded in said recorder's office, and the said title from Ella S. Benton to Mrs. Mary E. Monroe, dated the 4th day of November, 1899, and duly recorded, were null and of no force and effect, and ordering them to be cancelled and erased from the office of the said clerk and *ex officio* recorder of said parish.

The court appointed B. M. Miller attorney *ad hoc* to the defendant, Ella S. Benton, and directed that she be cited through him. He and Mrs. Mary E. Monroe excepted that they were not proper parties to the suit; that all the heirs of said Edward S. Benton should be made parties, and that the so-called dative testamentary executrix had no capacity to stand alone in judgment with reference to a title to real estate.

Should the said exception be overruled, they further excepted that the said Mrs. Rachel Manscoe was never the lawful wife of Edward B. Benton, and had no legal interest whatever in the matter and things set up.

Should the said exception be overruled they further excepted that the property described and referred to in said petition, and in the tax deed to Miss Ella S. Benton, and by Ella Benton sold and transferred to Mrs. Mary E. Monroe, did not belong to the estate of Edward B. Benton at the time of his death, and was no part of his succession.

That he sold the said property by act before George W. Christie, notary public, to Edward Telle, and Edward Telle, on the 30th of March, 1896, sold the said property to Joseph D. Taylor, and the said

property at the time of Edward Benton's death belonged to the said Joseph D. Taylor and was bought by the said Ella S. Benton from the sheriff of the Parish of St. Tammany under a lawful and legal assessment under the name of owner of record, to-wit: Joseph D. Taylor, and that petitioner as dative testamentary executrix of Edward Benton had no legal interest to contest the sale made by the sheriff of the Parish of St. Tammany of property lawfully assessed to Joseph D. Taylor and belonging to him.

That the petition was vague and inconsistent, and the petitioner should be called on to elect which of the several alleged causes of action and demands she would stand on and prosecute.

In view of the premises, exceptors prayed that these exceptions be maintained, and the said suit be dismissed with costs and for general relief.

The plaintiff filed a plea of estoppel against the exceptions. She pleaded that the defendants were estopped from pleading that the property was or was not the property of Edward B. Benton, deceased, at the time of his death, for the reason and by the fact that Miss Ella S. Benton did, in court on June, 1897, propound a document purporting to be the last will and testament of said Edward B. Benton, disposing of the property herein and for the reason and by the fact that the said Miss Ella S. Benton and the said Mrs. Mary Monroe had, at various times by proceedings in this court, by act of sale and other ways, claimed as heir and legatees under said alleged will said property as the property of said Edward B. Benton at the time of his death, and had attempted to sell, transfer, convey, and accept same.

Plaintiff prayed that said exception be dismissed.

The exceptions of the defendants and the plea of estoppel were referred to the merits.

The defendants answered under reservation of their exceptions, pleading first the general issue. They specially denied that Edward B. Benton owned at the time of his death all the property known as the Honey Island described in the inventory, and especially denied, if the court should come to the conclusion that he did own it, that it belonged to any community which might have existed between Rachel L. Benton, properly called Rachel L. Manscoe, and Edward B. Benton.

1.—Because Edward Benton's original acquisition of the said property was long before any pretended or alleged marriage between himself and the said Rachel L. Manscoe.

2.—Because the said plaintiff was never the lawful wife of Edward B. Benton; because

3.—That her pretended judgment of divorce in Knox County, Ind., was absolutely null and void and of no effect; because the court had no jurisdiction of the said Burrell Manscoe, who was her husband at that time, since her domicile and his was in the Parish of Orleans, La., where they had resided and were residing during the year of 1869 and for years before and after, and there was no citation or summons on the part of the said Burrell Manscoe, and the pretended divorce proceedings upon which Rachel L. Manscoe relied were absolutely null and void and of no effect for want of jurisdiction of the court and for want of citation, and she never was legally divorced from the said Burrell Manscoe, and she had no capacity to appear in this case and attack the said sale or claim any title to said property.

4.—Because at the time of the pretended marriage the judgment of divorce upon which she relied had not been rendered, and was not executory and could not under the law be executory until the end of the term and was not actually rendered until after the date of her pretended marriage which she claimed to have occurred on the 11th of August, 1869, and never having been lawfully the wife of said Edward B. Benton, she could not be the widow in community nor claim as such to be dative testamentary executrix, and as such executrix she had no capacity to sue for or recover any property claimed to have belonged to the said Edward B. Benton and for further answer showed—

That Edward B. Benton originally bought the property referred to before any pretended marriage with the said Rachel L. Manscoe; that he sold the said property and parted with it to Edward Telle by act before George W. Christie, notary public, in New Orleans, on the 27th day of December, 1877, registered in the Parish of St. Tammany, and Edward Telle sold the said property on March 30th, 1886, to Joseph D. Taylor, at New Orleans, by act passed before C. G. Rebentisch, notary public.

That respondent, Ella S. Benton, bought the said property as the property of said Joseph D. Taylor, having been assessed in his name for the year 1896, and standing properly in his name upon the books and records of the Parish of St. Tammany, and thereby acquired a good and legal title thereto, and the act of sale was recorded on the 8th day of June, 1897, but was filed for record with the clerk on the

22nd day of May, 1897, the sale having been made on the 15th of May, 1897.

That respondent, Ella S. Benton, having purchased the property of the said Joseph D. Taylor, by an act in all respects good and valid and having a good and perfect title thereto, was in lawful possession thereof.

Respondents denied that the said Rachel L. Manscoe, calling herself Rachel L. Benton, had any right or capacity to redeem or offer to redeem any property of the said Joseph D. Taylor, and denied that Eugene D. Saunders, on the 14th day of May, 1898, or at any time, had any power or authority to receive or accept any tender of redemption money, and denied that any lawful tender of redemption was made.

They especially denied that Eugene D. Saunders, as an attorney, had any authority, and averred that it was no part of his duty as an attorney to do what he did, and he had no such authority.

Respondents further showed that as soon as Ella S. Benton had been notified of what Eugene D. Saunders had done or attempted to do, she promptly and immediately repudiated his actions and returned him the New York exchange which he had sent her, and his actions in the premises were wholly null and void.

That within the year after the recordation or registry of the tax sale made by the sheriff to Edward B. Benton on 30th June, 1896, recorded 16th July, 1896, it was redeemed by Joseph D. Taylor by his payment in full into the hands of the sheriff the price and 20 per cent. penalties and interest added and all costs. The said Edward B. Benton was dead at the time of the said redemption and his heirs under his will, Ella S. Benton and Charlotte E. Benton, were absent from the parish.

Respondents admitted that Ella S. Benton being in lawful possession of the said property under a title translative of property *prima facie* valid, and which was in all respects valid, did, on or about the 4th of November, 1899, sell the said property to Mrs. Mary E. Monroe, and was in lawful possession thereof.

They prayed the demand of the said plaintiff be rejected, and reiterating the allegations of the exceptions filed and making them part of their answers, they prayed that the said Mrs. Mary E. Monroe might be quieted in her possession and enjoyment of the said property as owner, and be decreed to be the lawful owner of the said property, and for costs and for general relief and for trial by jury.

The plaintiff pleaded against the allegations in the answer of defendants attacking her marriage to Edward B. Benton, and disputing her capacity as dative testamentary executrix as *res judicata* the judgments rendered in the succession of Edward B. Benton, No. 360, of the docket of the court.

The case on the prayer of the defendants was tried before a jury.

The jury returned a verdict for the plaintiff and the court rendered judgment ordering, adjudging and decreeing, that the plaintiff, Rachel L. Benton, dative testamentary executrix of Edward B. Benton, deceased, both individually and as such executrix, have and recover judgment against the defendants, Miss Ella S. Benton and Mrs. Mary E. Monroe, decreeing that the tax title from John H. Stroble, sheriff and ex-officio tax collector of St. Tammany Parish, to Ella S. Benton, dated May 15th, 1897, and recorded in book "S," folio 298 of the recorder's office of said parish, conveying to said Ella S. Benton the property on Honey Island in St. Tammany Parish, described in the petition, to be null and void and of no force and effect, and that it be cancelled and erased from the records of the office of the said recorder of the said parish.

It is further ordered, adjudged and decreed that the title from Miss Ella S'. Benton to Mrs. Mary E. Monroe, dated the 4th of November, 1899, and recorded in said office in book "U," folio 502 to 504 and in mortgage book "H," pages 23 to 26, be adjudged and decreed null and void and of no force and effect, and that same be cancelled and erased from said records.

It is further ordered, adjudged and decreed that the plaintiff do have and recover of the said defendants, Miss Ella S. Benton and Mrs. Mary E. Monroe *in solido* for costs herein expended, and that she might have execution therefor.

Defendants appealed.

### OPINION.

The object of this suit is to set aside a tax sale made by the tax collector of the Parish of St. Tammany on the 15th of May, 1897, to Miss Ella S. Benton, of the property described therein and known as Honey Island, and to set aside a sale of the same property made on the 4th of November, 1899, by Miss Ella S. Benton to Mrs. Mary E. Monroe, and to have said property decreed to belong to the Succession of Edward B.

Benton, and to the community of acquets and gains alleged to have existed between him and the plaintiff, Rachel L. Benton.

The action was brought by the plaintiff claiming to be widow in community with Edward B. Benton, and as dative testamentary executrix of his last will and testament. The only defendants in the suit are Miss Ella S. Benton and Mrs. Mary E. Monroe. The former was originally brought into court through a curator, but appeared later through her counsel.

Edward B. Benton left a last will and testament by which, after making certain special legacies (one to Mrs. Mary E. Monroe), he constituted his two sisters, Miss Ella S. Benton and Charlotte Benton, his residuary legatees and Ella S. Benton his testamentary executrix. She qualified as such, but was removed and Rachel L. Benton was appointed and qualified as dative testamentary executrix.

The two sisters of Benton were absentees domiciled and residing in Massachusetts.

During the last illness of E. B. Benton his sister, Ella S. Benton, was with him at his home on Honey Island and remained with him until his death. Just prior to his death the Honey Island property (that involved in this litigation) was advertised to be sold and was offered for sale to enforce taxes assessed against it in the name of one Joseph D. Taylor. At this offering Miss Ella S. Benton became the adjudicatee for the sum of one hundred and sixty-eight dollars. This property had originally stood in the name of Edward B. Benton. He transferred the title to Edward Telle and Telle transferred it to Joseph D. Taylor. While the title was standing on the records in the name of Taylor, it was offered for sale in enforcement of delinquent back taxes which were assessed against the property as belonging to Taylor. Edward B. Benton became the adjudicatee at that offering. A deed to the property was given to him as a purchaser which was duly recorded in St. Tammany Parish.

Notwithstanding that fact the property was offered a second time for sale in enforcement of taxes assessed against it as the property of Taylor, and it was bought in, as has been stated, by Miss Ella S. Benton, she receiving a tax deed which was placed of record after the death of her brother, and while she was testamentary executrix. It is claimed that the sale from Benton to Telle and from Telle to Taylor were simulations resorted to by Benton for some purpose of his own, and that notwithstanding the transfers of the legal title of the prop-

erty, it remained constantly the property of Benton. While the title stood in Taylor's name, there arose contentions between Benton and Taylor in respect to the status of the property and to their business relations which seem to have been submitted for decision and adjustment to John Q. A. Fellows as amicable compounder. He made an award to the effect that Taylor should transfer the property to Benton on the latter's paying him $884 cash, or giving notes with vendors' lien for a like sum on the property, payable in one year from date with interest from date, with right reserved to pay said mortgage at any time before maturity. Taylor to transfer to Benton and to subrogate him to all his rights and claims and demands against Edward Telle or any other which he might have in regard to the Honey Island property.

Numerous objections are made to this award. It is claimed that it was not proved that Fellows had authority to make it; that if he had authority of any kind he had exceeded it. We have referred to this paper simply for the purpose of showing that both Taylor and Benton were interested in the question of the title to this property.

Assuming the award to have been authorized and binding, none of the parties in interest took steps under it until after the death of Edward B. Benton and the appointment and qualifying of Rachel L. Benton as dative testamentary executrix.

After qualifying as executrix she offered on behalf of the succession to carry out the obligations imposed on Benton by the award, but Taylor refused to accept the offer without assigning reasons.

Taylor took no steps to redeem the property from the effect of the *first tax sale* (that at which Benton became the purchaser) until after the death of Benton when he sent by mail, money to the tax collector of the Parish of St. Tammany for that purpose. The tax collector turned it over to the clerk of the District Court who retained and produced the same on the trial of the cause. The tax sale had been made on the 30th day of June, 1896, and the money was received by the sheriff on the 19th of June, 1897. It is urged that neither the sheriff nor the clerk were the proper parties to whom a tender should have been made; that they were not authorized to receive the money and that the money received was not of legal tender character. After the plaintiff was qualified as executrix and within the year for redemption, she tendered to Ella S. Benton, as purchaser at the second sale, the amount necessary to redeem the property. The money was tendered to and

received by Eugene D. Saunders, as being authorized to that effect by Miss Benton. Saunders forwarded the money twice to Miss Benton, but she returned the same to him with a denial of his right to have accepted it for her. The money is still in the hands of Mr. Saunders. This suit followed and Miss Benton in her answer adheres to her denial of the authority of Mr. Saunders to have acted for her in the matter. The case was tried before a jury which returned a verdict in favor of the plaintiff against both of the defendants, and by judgment of the court the two sales were set aside as prayed for by the plaintiff. Defendants appealed.

We think the plaintiff was authorized to institute the action to recover the property for the succession as against the adverse claims of Miss Ella S. Benton (as a tax purchaser of the same) and those of Mrs. Mary E. Monroe. (C. P. 123; Executors of Hart vs. Boni, 6 La. 99; Smith vs. Sinnott, 44 Ann. 51). We do not think there are proper parties before the court for us to determine whether the claim of the plaintiff, that the property belonged to a community of acquets and gains between herself and Edward B. Benton, be well grounded or not. We do not think that issue can be properly adjudicated or passed upon in this suit as matters stand. The most we should do would be to decree the property to belong to the Succession of Benton if we ascertain there is no title in Miss Ella S. Benton to the property under the tax adjudication, leaving the rights of the heirs and of the plaintiff *inter se* to be advanced and disposed of in other proceedings.

We are of the opinion, under the evidence, that Eugene D. Saunders was authorized to accept on behalf of Miss Ella S. Benton the tender made her for the redemption of the property from the tax sale. The written authority for that purpose was contained in a letter written by her to Mr. Saunders, which letter was shown by his testimony to have been mislaid or lost and could not be found after diligent search. It had been shown to and read by the attorneys of the plaintiff who made the tender, and they acted upon it. They, as well as Mr. Saunders, testified to the contents of the letter.

In view of the asserted right of Benton to the ownership of this property as between himself and Taylor independently of the tax title, and of his claims to its ownership under the first tax sale title, we think the plaintiff was warranted in redeeming the property as against adverse claims asserted against both Benton and Taylor.

We are impressed from all the circumstances of the case that it was

not Miss Ella S. Benton's intention, when she became the adjudicatee at the second tax title, to act adversely to the interests of her brother, then lying upon his death bed. We think, on the contrary, that she acted for and on behalf of her brother in the premises and to disembarrass the title from the claims and pretensions of Taylor. We do not think she would have repudiated the authority of Mr. Saunders, or would have advanced the claim which she does to ownership in this property adversely to the succession, but for those advanced by the plaintiff as widow in community. The property should be decreed to be the property of the Succession of Edward B. Benton. The advertisement of the loss of the letter was not necessary as a condition precedent to receiving secondary evidence as to its contents. The secondary evidence received was properly received and established fully the agency of Mr. Saunders. We find nothing in that letter which would justify its exclusion as a confidential communication between client and attorney.

The property should be decreed to belong to the Succession of E. B. Benton, reserving to be hereafter advanced and disposed of, all claims which either the plaintiff, Mrs. Rachel L. Benton or the heirs of Edward B. Benton, may set up as between themselves. We do not think the sale made by Miss Ella S. Benton to Mrs. Mary E. Monroe should be set aside, except in so far as it may be inconsistent with the recognition which is made in this decree that the ownership of the property involved in this litigation is in the Succession of Edward B. Benton. In so far as by said sale Miss Ella S. Benton has conveyed to Mrs. Mary E. Monroe all right and interest which she may have acquired therein as heir and legatee of Edward B. Benton, the said sale remains unaffected by this judgment. We think the terms of the judgment as written are too broad. For the reasons herein assigned it is ordered, adjudged and decreed that the Succession of Edward B. Benton is owner of the property involved in this litigation of which property the defendant, Miss Ella S. Benton, became the adjudicatee at the tax sale made by John T. Stroble, sheriff of the Parish of St. Tammany and ex-officio tax collector, on the 15th day of May, 1897, and for which property the said tax collector executed deed of sale to her recorded in the clerk and recorder's office of that parish on the 8th day of June, 1897. It is further adjudged that the act of sale made by Miss Ella S. Benton to Mrs. Mary E. Monroe on the 4th day of November, 1899, is of no effect in so far as its provisions are incon-

sistent with the recognition herein made of the ownership of said property being in the Succession of Edward B. Benton. It is further ordered, adjudged and decreed that all claims which either the plaintiff Mrs. Rachel L. Benton individually or the heirs of Edward B. Benton may have as among themselves in respect to the property involved in this litigation are expressly reserved to them to be hereafter advanced and disposed of. It is further ordered, adjudged and decreed that the judgment appealed from, except in so far as modified or amended hereby, is affirmed. Costs of appeal to be borne by the Succession of Edward B. Benton.

Rehearing refused.